# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ANIMAL MEDICAL CENTER OF ORLAND PARK, INC., on behalf of plaintiff and the class members defined herein, | ) ) ) ) ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| JPMORGAN CHASE & CO.; JPMORGAN CHASE BANK, N.A.; CHASE BANK USA, N.A.; and JOHN DOES 1-10, | ) ) ) ) | |

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1. Plaintiff Animal Medical Center of Orland Park Inc. brings this action to secure redess for the actions of defendants JP Morgan Chase & Co., JPMorgan Chase Bank, N.A., and Chase Bank USA, N.A., in sending or causing the sending of unlawful advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

2. More than two decades ago the TCPA was enacted into law. The law responded to countless complaints by American consumers and businesses about the cost, disruption and nuisance imposed by junk faxes. By the early 1990s advertisers had exploited facsimile telephone technology to blanket the country with junk fax advertisements. This practice imposed tremendous disruption, annoyance and cost on American consumers and businesses. Among other things, junk faxes tie up recipients' telephone lines and facsimile machines, misappropriate and convert

recipients' fax paper and toner, and require recipients to sort through faxes to separate legitimate faxes from junk faxes, and to discard the latter.

3. Congress responded to the problem by passing the TCPA. The law was enacted to eradicate "the explosive growth in unsolicited facsimile advertising, or 'junk fax.'" H.R. Rep. No. 102-317 (1991). The law prohibited the transmission of facsimile advertising without the prior permission of the recipient.

4. In the decade following the law's enactment, however, American consumers and businesses continued to be "besieged" by junk faxes because advertisers refused to honor requests by recipients to stop. FCC, Report and Order on Reconsideration of Rules and Regulations Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (2003). Congress responded by strengthening the law through the Junk Fax Prevention Act of 2005 ("JFPA"). The JFPA, for the first time, required advertisers to disclose in their faxes that recipients have the right to stop future faxes and to explain how they can exercise that right.

**PARTIES**

5. Plaintiff Animal Medical Center of Orland Park Inc. is an Illinois corporation with offices at 16200 S. LaGrange Road, Orland Park, Illinois, where it maintains telephone facsimile equipment.

6. Defendant JP Morgan Chase & Co., is a Delaware corporation with offices at 270 Park Avenue, New York, NY 10017-2070.

7. Defendant JPMorgan Chase Bank, N.A., is a federally chartered corporation with offices at 1111 Polaris Parkway, Columbus, OH 43240.

8. Defendant Chase Bank USA, N.A., is a federally chartered corporation with offices

at 201 North Walnut Street, Wilmington, DE 19801.

9.  Defendants John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below. Plaintiff does not know who they are.

## JURISDICTION AND VENUE

10.  This Court has jurisdiction under 28 U.S.C. §§1331 and 1367. Mims v. Arrow Financial Services, LLC, 132 S. Ct. 740, 751-53 (2012); Brill v. Countrywide Home Loans, Inc., 427 F.3d 446 (7th Cir. 2005), and 47 U.S.C. §227.

11.  Personal jurisdiction exists under 735 ILCS 5/2-209, in that defendants:

   a.  Have committed tortious acts in Illinois by causing the transmission of unlawful communications into the state.

   b.  Do business in Illinois at One Chase Plaza, Chicago, Illinois.

12.  Venue in this District is proper for the same reason.

## FACTS

13.  On or about October 12, 2010, plaintiff Animal Medical Center of Orland Park Inc. received the fax advertisement attached as Exhibit A on its facsimile machine.

14.  Discovery may reveal the transmission of additional faxes as well.

15.  Exhibit A advertises a financing product, Chase Health Advance, formerly offered by defendants.

16.  Exhibit A directs inquiries to "practice consultant Michael Hill at 863-859-7950."

17.  Hill used the email address mike.hill@chase.com (Exhibit B).

18.  The web site www.chase.com is registered to JPMorgan Chase & Co. (Exhibit C)

19. The web site www.chasehealthadvance.com, also referred to on Exhibit B, was also registered to JPMorgan Chase & Co. (Exhibit D).

20. The financing product advertised was offered by defendants JPMorgan Chase Bank, N.A., and/or Chase Bank USA, N.A.

21. Defendants are responsible for sending or causing the sending of the faxes.

22. Defendants, as the entities whose products or services were advertised in the faxes, derived economic benefit from the sending of the faxes.

23. Defendants JPMorgan Chase Bank, N.A., and Chase Bank USA, N.A., are direct or indirect subsidiaries or affiliates of defendant JPMorgan Chase & Co.

24. Defendants either negligently or wilfully violated the rights of plaintiff and other recipients in sending the faxes.

25. The faxes do not contain an "opt out" notice that complies with 47 U.S.C. §227.

26. The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).

27. The TCPA provides for affirmative defenses of consent or an established business relationship. Both defenses are conditioned on the provision of an opt out notice that complies with the TCPA. Holtzman v. Turza, 728 F.3d 682 (7th Cir. 2013); Nack v. Walburg, 715 F.3d 680 (8th Cir. 2013).

28. On information and belief, the fax attached hereto was sent as part of a mass broadcasting of faxes. The fax advertises a product of interest to any veterinarian and is not individually addressed.

4

29. On information and belief, defendants have transmitted similar fax advertisements to at least 40 other persons in Illinois.

30. There is no reasonable means for plaintiff or other recipients of defendants' advertising faxes to avoid receiving illegal faxes. Fax machines must be left on and ready to receive the urgent communications authorized by their owners.

## COUNT I – TCPA

31. Plaintiff incorporates ¶¶ 1-30.

32. The TCPA, 47 U.S.C. §227(b)(3), provides:

**Private right of action.**

> **A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**
>
> > **(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
> >
> > **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**
> >
> > **(C) both such actions.**
>
> **If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

33. Plaintiff and each class member suffered damages as a result of receipt of the faxes, in the form of paper and ink or toner consumed as a result. Furthermore, plaintiff's statutory right of privacy was invaded.

34. Plaintiff and each class member is entitled to statutory damages.

35. Defendants violated the TCPA even if their actions were only negligent.

36. Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

37. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of one or more of the defendants promoting their goods or services for sale, including without limitation Exhibit A, (d) and which did not contain an opt out notice as described in 47 U.S.C. §227. Plaintiff reserves the right to amend the class definition following completion of class certification discovery.

38. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

39. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. Plaintiff is informed and believes, and upon such information and belief avers that the case arises out of a common nucleus of facts and that Defendants have engaged in the same general course of conduct vis-à-vis class members, and all class member's damages arise out of that conduct. The predominant common questions include:

    a. Whether the faxes at issue are advertisements within the ambit of the JFPA and FCC regulations;

    b. Defendants' mode and method of obtaining the telephone numbers to which the junk faxes were sent and whether that mode and method complied with the requirements of the TCPA and FCC regulations;

      c.      Whether defendants complied with the Opt-Out Notice Requirements of the JFPA and FCC regulations,

      d.      The legal consequences of the failure to comply with those requirements;

      e.      What constitutes a knowing or willful violation of the JFPA;

      f.      Whether defendants committed knowing and/or willful violations of the JFPA and/or FCC regulations;

40. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

41. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

42. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

43. Several courts have certified class actions under the TCPA. Holtzman v. Turza, 08 C 2014, 2009 WL 3334909, 2009 U.S. Dist. LEXIS 95620 (N.D.Ill., Oct. 14, 2009), aff'd in relevant part, 728 F.3d 682 (7th Cir. 2013); Sadowski v. Med1 Online, LLC, 07 C 2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); CE Design Ltd. v Cy's Crabhouse North, Inc., 259 F.R.D. 135 (N.D.Ill. 2009); Targin Sign Sys. v Preferred Chiropractic Ctr., Ltd., 679 F. Supp. 2d 894 (N.D.Ill. 2010); Garrett v. Ragle Dental Lab, Inc., 10 C 1315, 2010 U.S. Dist. LEXIS 108339, 2010 WL 4074379 (N.D.Ill., Oct. 12, 2010); Hinman v. M & M Rental Ctr., 545 F.Supp.

2d 802 (N.D.Ill. 2008); Clearbrook v. Rooflifters, LLC, 08 C 3276, 2010 U.S. Dist. LEXIS 72902 (N.D. Ill. July 20, 2010) (Cox, M.J.); G.M. Sign, Inc. v. Group C Communs., Inc., 08 C 4521, 2010 WL 744262, 2010 U.S. Dist. LEXIS 17843 (N.D. Ill. Feb. 25, 2010); Kavu, Inc. v. Omnipak Corp., 246 F.R.D. 642 (W.D.Wash. 2007); Display South, Inc. v. Express Computer Supply, Inc., 961 So.2d 451, 455 (La. App. 1st Cir. 2007); Display South, Inc. v. Graphics House Sports Promotions, Inc., 992 So. 2d 510 (La. App. 1st Cir. 2008); Lampkin v. GGH, Inc., 146 P.3d 847 (Ok. App. 2006); ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 203 Ariz. (App.) 94, 50 P.3d 844 (2002); Core Funding Group, LLC v. Young, 792 N.E.2d 547 (Ind.App. 2003); Critchfield Physical Therapy v. Taranto Group, Inc., 293 Kan. 285; 263 P.3d 767 (2011); Karen S. Little, L.L.C. v. Drury Inns. Inc., 306 S.W.3d 577 (Mo. App. 2010).

44. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

45. Plaintiff is entitled to have preliminary and permanent injunctions issue to: (1) prohibit Defendant, its employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with it, from committing further violations of the Act and FCC regulations, and thereby, among other things, prohibiting Defendant, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with it, from sending any unsolicited advertisements via facsimile to any person or entity, or sending any advertisements via facsimile that do not comply with the Opt-Out Notice Requirements to any person or entity; (2) require Defendant to deliver to Plaintiff all records of facsimile advertisements sent commencing within four years preceding the filing of this action, including all content sent via facsimile, fax lists, and transmission records; (3) require Defendant to adopt ongoing educational, training and

monitoring programs to ensure compliance with the JFPA and FCC regulations, and limiting facsimile advertising activity to personnel who have undergone such training; (4) require Defendant to provide written notice to all persons and entities to whom Defendant sent, via facsimile transmission, advertisements in violation the Act and/or FCC regulations, warning such persons and entities that the faxing of unsolicited advertisements or advertisements that do not comply with the Opt-Out Notice Requirements violates the JFPA and that they should not be led or encouraged in any way by Defendant's violations of the Act and/or FCC regulations to send advertisements of their own that violate the Act and/or FCC regulations; and (5) require Defendant to place conspicuously on the homepage of its websites the warnings contained in subsection 4 of this paragraph

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a. Actual damages;

    b. Statutory damages;

    c. An injunction against the further transmission of unlawful fax advertising;

    d. Costs of suit;

    e. Certifying a class described in Paragraph 37 of this Complaint

    f. Appointing Plaintiff as representative for the Plaintiff Class and awarding Plaintiff an incentive award for its efforts as class representative.

    g. Appointing Plaintiff's counsel as counsel for the Plaintiff Class.

    h. Entering the preliminary and permanent injunctions requested in paragraph 45 of this Complaint.

    i. Such other or further relief as the Court deems just and proper.

/s/ Daniel A. Edelman
Daniel A. Edelman
/s/ Dulijaza Clark
Dulijaza Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

And

/s/ Frank F. Owen
Frank F. Owen, Esq.
Florida Bar No. 0702188
FFO@CastlePalms.com
Frank F. Owen & Associates, P.A.
1091 Ibis Avenue
Miami Springs, Florida 33166
Tel: (305) 984-8915
FFO@Castlepalms.com

Attorneys for Plaintiff Animal Medical Center of Orland Park Inc. and all others similarly situated

**NOTICE OF LIEN AND ASSIGNMENT**

  Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


          /s/ Daniel A. Edelman
          Daniel A. Edelman


Daniel A. Edelman
Dulijaza Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)



          /s/ Frank F. Owen
          Frank F. Owen

Florida Bar No. 0702188
FFO@CastlePalms.com
Frank F. Owen & Associates, P.A.
1091 Ibis Avenue
Miami Springs, Florida 33166
Tel:  (305) 984-8915
FFO@Castlepalms.com