IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANIMAL MEDICAL CENTER OF ORLAND PARK, INC., on behalf of itself and others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CHASE BANK USA, N.A., <br><br> Defendant. | NO. 1:14-cv-01251 <br><br> Hon. Manish S. Shah |

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

Plaintiff Animal Medical Center of Orland Park, Inc., ("Plaintiff") respectfully requests that this Court grant the Motion for Preliminary Approval of Settlement: (i) preliminarily certifying a class for settlement purposes; (ii) granting preliminary approval of the Settlement Agreement attached hereto as Appendix A; and (iii) appointing Animal Medical Center of Orland Park, Inc. as Class Representative and Edelman, Combs, Latturner & Goodwin, LLC and Frank F. Owen & Associates, P.A. as class counsel. In support of this motion, Plaintiff states as follows:

  1. Plaintiff filed the above-captioned lawsuit against defendant, Chase Bank, USA, N.A.[1] ("Chase" or "Defendant"), alleging that it violated the Telephone Consumer

---

[1] Plaintiff's original complaint, filed on February 19, 2014 (Dkt No. 1) named JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and Chase Bank USA, N.A. Plaintiff has filed concurrently herwith a proposed amended complaint which removes JPMorgan Chase & Co., and JPMorgan Chase Bank, N.A., and revises the definition of the proposed class.

1

Protection Act, 47 U.S.C. §227 ("TCPA"), by sending unsolicited facsimile advertisements to Plaintiff and other members of the nationwide class that did not contain an opt out notice in the form required by the TCPA.

2. Counsel for Plaintiff and Defendant have reviewed and analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals. The parties conducted arms-length settlement discussions including a formal mediation with Hon. Judge Morton Denlow (Ret) who assisted the parties in negotiating a settlement.

3. Based upon this review and analysis, Plaintiff and the Defendant entered into the Settlement Agreement, attached hereto as <u>Appendix A</u>.[2]

4. The parties desire to settle and compromise the litigation on the terms and conditions embodied in the Settlement Agreement, including, without limitation, the following:

a. <u>Class Certification</u>. The parties agree to the conditional certification of a class, for settlement purposes only, consisting of:

> All persons or entities who, on or after July 1, 2010 through December 31, 2010 received a facsimile message from Chase relating to its ChaseHealthAdvance line of business. Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Judge's staff and immediate family members, as well as all persons who validly request exclusion from the Settlement Class.

Based on a review of its records as well as the records of a third-party, Chase has advised Plaintiff that approximately 24,199 unique fax numbers were identified to have been sent a total

---

[2] All capitalized terms not otherwise defined herein are used in accordance with the definitions set forth in the Settlement Agreement.

2

of approximately 46,782 facsimiles during the Class Period (July 1, 2010 through December 31, 2010).

    5.  <u>Settlement Recovery</u>.  The Settlement Agreement requires Chase to deposit $1,525,000.00 (hereinafter "the Settlement Fund") into an Escrow Account to be established by the Settlement Administrator.   The Settlement Fund will be distributed as follows:

    a.  Reasonable costs of notice and administration will be paid from the Settlement Fund up to a maximum of $100,000.00.

    b.  Plaintiff's counsel's attorney's fees, which must be approved by the Court, will be paid from the Settlement Fund.  Plaintiff's counsel may submit a request for attorney's fees in an amount not to exceed $508,333.33 or 1/3 of the Settlement Fund.

    c.  Plaintiff's incentive award, which must be approved by the Court, will be paid from the Settlement Fund.  Plaintiff Animal Medical Center of Orland Park, Inc. may submit a request for an award of $15,000 as an incentive award for services as a Class Representative.

    d.  If the deductions described in subparagraphs (a)-(c) are approved by the Court, the remaining money in the Settlement Fund will be divided pro rata among Settlement Class Members who timely submit a valid Claim Form, providing each recipient with an "Award Unit" except that Settlement Class Members who are or were veterinary practices will be entitled to three Award Units.

    e.  All settlement checks shall be void 120 days from the date of issuance and shall so state on the check.  If there is sufficient money remaining in the Settlement Fund after 120 days from the issuance of settlement checks to pay each Settlement Class

Member who cashed his/her/its initial Settlement Award at least $10.00 each, such remaining monies will be distributed on a pro-rata basis to those Settlement Class Members (any administration costs arising from this Second Distribution will be paid from the Settlement Fund). Any unclaimed or undistributed amounts remaining in the Settlement Fund after all payments required under the Settlement Agreement have been made shall be distributed to a *cy pres* recipient, selected by the parties and approved by the Court. No amount of money shall revert to Chase.

6. <u>Class Notice</u>. The Settlement Agreement provides for notice by facsimile, e-mail and mail. Specifically, the Claims Administrator will provide individual notice in the following order subject to availability of information: (i) *Facsimile Notice*: For Class Members for whom either Chase or its third-party vendor possesses a facsimile number, the Claims Administrator will transmit a single page Facsimile Notice plus Claim Form to each such facsimile number; (ii) *Electronic Mail Notice*: If no facsimile number exists or for those notices sent via facsimile and which returned as undeliverable, Notice and Claim Forms shall be sent to the most recent e-mail address as reflected in the reasonably available computerized account records of Chase, provided that the person/entity has not opted-out of receiving electronic mail from Chase (the "E-mail Notice"); or (iii) *Direct Mail Notice*: Notice and Claim Forms shall be sent by first class U.S. Mail to the most recent mailing address for those persons in the Settlement Class for whom Chase does not have a facsimile number or an e-mail address; and/or who have opted out of receiving e-mails from Chase; and to those Settlement Class Members to whom e-mail Notice was sent and returned as undeliverable (the "Mail Notice"). The forms of Facsimile Notice, E-Mail Notice and Mail Notice are attached to the Settlement Agreement as Exhibits C-E.

Several courts both within and outside this District have approved the sending of notice by facsimile in TCPA class action settlements. *See e.g.*, C.E. Design, Ltd. v. King Supply Co., LLC, 09 C 2057, 2012 WL 2976909 (N.D. Ill. July 20, 2012); Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc., 12 C 780 (N.D. Ill.)(*Dkt. No. 73*)(fax and publication notice); Able Home Health, LLC and Dr. G. Neil Garrett DDS, PC v. Globe Medical-Surgical Supply Co., 12 C 5608 (N.D. Ill.) (*Dkt No. 90*)(fax notice); Dr. William P. Gress v. Northwood, Inc., 12 C 7278 (N.D. Ill.)(*Dkt. No. 38*)(fax and mail notice); Able Home Health, LLC v. Healthy Advice Communications, Inc., 12 C 3019 (N.D. Ill.)(*Dkt. No. 60*)(fax and mail notice); Richard Wade Architects, P.C. v. Engineering Services and Products Company, 11 C 9251 (N.D. Ill.)(*Dkt. No. 58*)(fax notice); City Select Auto Sales, Inc. v. David Randall Associates, Inc., 11-2658 (JBS/KMW), 2014 WL 413533 (D.N.J. Feb. 3, 2014). Vandervort v. Balboa Capital Corp., SACV 11–1578–JLS (JPRx), 2014 WL 1274049 (C.D. Cal. March 27, 2014); A & L Industries, Inc. v. P. Cipollini, Inc., 12-07598, 2014 WL 906180, at *1 (D.N.J. March 7, 2014)(rejecting arguments that notice had to be served in accordance with Rule 5(b); "Rule 23(c) should supersede because Rule 23(c) addresses class notice specifically, whereas Rule 5 addresses service generally..."). See MacLean-Fogg Co. v. Ningbo Fastlink Equipment Co., Ltd., 08 C 2593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008) (Court allowed service of summons and complaint to Chinese defendants by email and fax); Fed. R. Civ. P. 4 Commentary provides that a waiver of service may be sent by fax.

The Settlement Agreement provides that within 15 days after entry of the Preliminary Approval Order, Chase's counsel shall provide the Class List to the Class Administrator. Within 60 days after entry of the Preliminary Approval Order, the Class Administrator shall cause Notice (which includes a Claim Form) to be delivered to Class

5

Members identified on the Class List. Settlement Class Members shall have at least 90 days after the first date on which Notice is sent to submit a Claim Form, request exclusion from the Settlement Agreement, or object to the Settlement Agreement.

In addition to the Settlement Class Notice Program set forth above, the Claims Administrator will establish and maintain a Settlement Website dedicated to the Settlement, on which will be posted the Mail Notice in the form of <u>Exhibit E</u>, Claim Form, the First Amended Complaint and the Settlement Agreement, Likewise, Settlement Class Counsel will also post the Notice in the form of <u>Exhibit E</u> to the Agreement, excluding a Claim Form, and the Settlement Agreement (excluding exhibits) on their firm's website.

7. <u>Class Members' Right to Opt Out</u>. Any member of the Settlement Class may seek to be excluded from the Settlement Agreement and the releases therein by opting out of the Settlement Class within the time period set by this Court. Any member who opts out of the Settlement Class shall not be bound by any prior Court order or the terms of the Settlement Agreement and shall not be entitled to any of the monetary benefits set forth in the Settlement Agreement. The parties propose that Class Members have 90 days after the first date on which Notice is sent to opt out of the Settlement Agreement.

8. <u>Claim Form</u>. In order to receive the consideration provided under the Settlement Agreement, each Settlement Class Member must timely submit a Claim Form. Settlement Class Members will be provided with the option to complete and submit the Claim Form online via the Settlement Website or to complete and return the Claim Form via U.S. Mail. After the deadline for the receipt of Claim Forms expires, the Claims Administrator, with the assistance of counsel for the parties, will determine the number of valid Claim Forms received.

9. <u>Class Members' Right to Object</u>. Any Settlement Class Member may

object to the Settlement Agreement by filing with the Court and mailing to Settlement Class Counsel and counsel for Defendant a written objection within the time period set by this Court. Any member who objects to the Settlement Agreement may appear and be heard at the final approval hearing. The parties propose that Class Members have 90 days after the first date on which actual Notice is sent to object to the Settlement Agreement.

      10.    Federal Rule of Civil Procedure 23(a) makes class certification appropriate in cases where:

> **(1) The class is so numerous that joinder of all members is impracticable,**
>
> **(2) There are questions of fact or law common to the class,**
>
> **(3) The claims or defenses of the representative parties are typical of the claims defenses of the class, and**
>
> **(4) The representative parties will fairly and adequately protect the interest of the class.**

Further, Federal Rule of Civil Procedure 23(b)(3) provides that a class action is maintainable if the above prerequisites have been met and:

> **the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.**

As demonstrated below, each of the requirements for conditional certification of the Settlement Class is met.

      a.    <u>Rule 23(a)(1) -- Numerosity</u>. Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of

7

the proposed class is greater than the minimum number required for class certification, which is about 10-40. Kulins v. Malco, 121 Ill. App. 3d 520, 530, 459 N.E.2d 1038 (1st Dist. 1984) (19 and 47 sufficient); Swanson v. American Consumer Industries, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); Cypress v. Newport News General & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); Riordan v. Smith Barney, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (10-29 sufficient); Sala v. National R. Pass. Corp., 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (72 class members).

In the present case, Chase has determined, based on a review of the available records, including its own records and documents and/or records received from a third party, that a total of 46,782 faxes were sent to approximately 24,199 unique fax numbers. This plainly satisfies the numerosity requirement.

    b. Rule 23(a)(2) -- Commonality; and Rule 23(b)(3)- Common Questions of Law or Fact Predominate. Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law or fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation. Blackie v. Barrack, 524 F.2d 891, 910 (9th Cir. 1975). Common questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims. McClendon v. Continental Group, Inc., 113 F.R.D. 39, 43-44 (D.N.J. 1986); Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 114 F.R.D. 48, 52 (S.D.N.Y. 1987); Spicer v. Chicago Board Options Exchange, CCH Fed.Sec.L.Rptr. [1989-90 Transfer Binder] ¶94,943, at

8

p. 95,254 (N.D. Ill. 1990); Alexander Grant & Co. v. McAlister, 116 F.R.D. 583, 590 (S.D. Ohio 1987). Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." Franklin v. City of Chicago, 102 F.R.D. 944, 949 (N.D.Ill. 1984); Patrykus v. Gomilla, 121 F.R.D. 357, 361 (N.D. Ill. 1988).

Here, there are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

(1) Whether Defendant engaged in a pattern of sending unsolicited facsimile advertisements;

(2) Whether Defendant sent, or caused to be sent, the facsimiles at issue;

(3) Whether Defendant thereby violated the TCPA;

(4) The manner in which Defendant compiled or obtained the list of facsimile numbers at issue.

The Settlement Class is defined in terms of all persons and entities with fax numbers that, during the Class Period, received facsimiles by or on behalf of Chase relating to its ChaseHealthAdvance line of business.

Several courts have certified class actions under the TCPA. Holtzman v. Turza, 08 C 2014, 2009 WL 3334909 (N.D. Ill., Oct. 14, 2009), aff'd in relevant part, 728 F.3d 682 (7th Cir. 2013); CE Design Ltd. v. Cy's Crabhouse North, Inc., 07 C 5456, 2009 U.S. Dist. LEXIS 67323 (N.D. Ill. July 27, 2009); Sadowski v. Med1 Online, LLC, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); Hinman v. M & M Rental Ctr., 06 C 1156, 2008 U.S. Dist. LEXIS 27835 (N.D.Ill., April 7, 2008); Targin Sign Sys. v. Preferred Chiropractic Ctr., Ltd., 679 F.Supp. 2d 894 (N.D. Ill 2010); Garrett v. Ragle Dental Lab, Inc., 10 C 1315, 2010 WL

4074379 (N.D. Ill. Oct. 12, 2010); Lampkin v. GGH, Inc., 146 P.3d 847 (Okla. Ct. App. Oct. 31, 2006); Display South, Inc. v. Express Computer Supply, Inc., 961 So.2d 451, 455 (La. App. 1st Cir. 2007); Transportation Institute v. Promo Dart, Inc., No. 06-2-03460-1 (King Co. Sup. Ct. Wash., Nov. 14, 2006); Kavu, Inc. v. Omnipak Corporation, 246 F.R.D. 642 (W.D. Wash. 2007); ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 203 Airz. (App.) 94, 50 P.3d 844 (2002); Critchfield Physical Therapy v. Taranto Group, Inc., 293 Kan. 285, 263 P.3d 767 (2011); Karen S. Little, LLC v. Drury Inns, Inc., 306 S.W.3d 577 (Mo. App. 2010).

    c. Rule 23(a)(3) – Typicality. Rule 23 requires that the claims of the named plaintiff be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.

De La Fuente v. Stokely Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

  In the instant case, typicality is inherent in the class definition. By definition, each of the class members has been subjected to the same practice as the named Plaintiff, namely they are persons and entities with facsimile numbers that, during the Class Period, were sent faxes by or on behalf of Chase relating to its ChaseHealthAdvance line of business.

    d. Rule 23(a)(4) -- Adequacy of Representation. The adequacy of representation requirement involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992).

10

Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Counsel's qualifications are set forth in Appendices B -C. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

    e. Rule 23(b)(3) -- Class Action Is Superior to Other Available Methods of Resolving This Controversy. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims is small because generally the class members are unaware of their rights and have damages such that it is not feasible for them to bring individual actions. "[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." Brady v. LAC, Inc., 72 F.R.D. 22, 28 (S.D.N.Y. 1976).

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> **A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .**

In re Folding Carton Antitrust Litigation, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted). Another court has noted:

> **Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller, and Kane have discussed in analyzing consumer protection class actions such as the instant one, 'typically the**

11

> **individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see, e.g., <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.**

<u>Lake v. First Nationwide Bank</u>, 156 F.R.D. 615, 625 (E.D. Pa. 1994).

      11.     Counsel for Plaintiff and the proposed class believe that the settlement of this action on the terms and conditions set forth in the Settlement Agreement is fair, reasonable, and adequate, and would be in the best interest of the Class Members.

      WHEREFORE, Plaintiff respectfully requests that this Court enter an order in the form of <u>Appendix D</u>, which (i) grants preliminary approval of the proposed settlement, (ii) appoints Animal Medical Center of Orland Park, Inc. as Class Representative and the law firms Edelman, Combs, Latturner & Goodwin, LLC and Frank F. Owen & Associates, P.A. as class counsel; (iii) approves the Notice Program and directs the delivery of the Class Notice(s) and a Claim Form in the forms attached to the Settlement Agreement; (iv) enjoins any member of the Settlement Class from commencing, prosecuting or continuing to pursue on behalf of a class any of the Released Claims, and (v) sets dates for submission of Claim Forms, opt-outs, appearances and objections, and schedules a hearing for final approval under Fed. R. Civ. P. 23(c)(2).

      Respectfully submitted,

      /s/
      Dulijaza Clark

12

Daniel A. Edelman
Dulijaza Clark
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

And

Frank F. Owen, Esq.
Florida Bar No. 0702188
FFO@CastlePalms.com
Frank F. Owen & Associates, P.A.
1091 Ibis Avenue
Miami Springs, Florida 33166
Tel: (305) 984-8915
FFO@Castlepalms.com

Attorneys for Plaintiff Animal Medical Center
of Orland Park Inc. and all others similarly situated

## **CERTIFICATE OF SERVICE**

I, Dulijaza Clark, certify that on December 10, 2015, I caused a true and accurate copy of the foregoing document to be filed via the Court's CM/ECF system, which shall cause service upon the following parties:

STROOCK & STROOCK & LAVAN LLP
Julia B. Strickland
jstrickland@stroock.com
Arjun P. Rao
arao@stroock.com
2029 Century Park East
Los Angeles, California 90067-3086


/s/ Dulijaza Clark
Dulijaza Clark

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Dulijaza Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

14